**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| **GLOBAL NATURAL, LLC**<br>**303 Second Street, Suite B**<br>**Annapolis, Maryland 21403** | *<br>* | |
| ***Plaintiff,*** | * | |
| **v.** | * | **Case No. 1:17-CV-01799-GLR** |
| **HAKAN AGRO DMCC**<br>**34th Floor, Mazaya Business Avenue,**<br>**BB2 Tower**<br>**Jumeirah Lakes Towers,**<br>**Sheikh Zayed Road, P.O. Box 31489**<br>**Dubai, United Arab Emirates,** | *<br>*<br>*<br>* | |
| and | * | |
| **AGROPEX INTERNATIONAL, INC.**<br>**413 South Main Street**<br>**Broadway, Virginia 22815** | *<br>* | |
| **and** | * | |
| **BEYAZ AGRO**<br>**Beyaz Agro Ith. Ihr. San. Ve Tic. A.S.**<br>**Budak Mah 10031 Nolu Sok No 42 Yasem Is**<br>**Merkezi Kat 10 D 1016-1017 Sehitkamil**<br>**Gaziantep, Turkey** | *<br>*<br>* | |
| **and** | * | |
| **GOKSAL BEYAZ**<br>**Beyaz Agro Ith. Ihr. San. Ve Tic. A.S.**<br>**Budak Mah 10031 Nolu Sok No 42 Yasem Is**<br>**Merkezi Kat 10 D 1016-1017 Sehitkamil**<br>**Gaziantep, Turkey** | *<br>*<br>* | |
| **and** | * | |
| **HAKAN BAHCECI**<br>**34th Floor, Mazaya Business Avenue,** | * | |

**BB2 Tower**
**Jumeirah Lakes Towers,** *
**Sheikh Zayed Road, P.O. Box 31489**
**Dubai, United Arab Emirates,** *

***Defendants*.** *

* * * * * * * * * * * * *

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Global Natural LLC ("GN" or the "Plaintiff"), by its undersigned counsel, files this First Amended Complaint for damages for fraud, breach of contract, conspiracy and negligent misrepresentation against Defendants Hakan Organics DMCC ("Hakan"), Beyaz Agro ("Beyaz"), Agropex International, Inc. ("Agropex"), Goksal Beyaz ("Goksal Beyaz"), and Hakan Bahceci ("Hakan Bahceci").

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and (b), because the amount in controversy, excluding costs and interest, exceeds $75,000 and complete diversity exists between the parties to this action.

2. Venue properly lies within this district pursuant to 28 U.S.C. §§ 1391 (a) and (b) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

3. Further, the Parties agreed, per the explicit terms of the agreement that is the basis for their business relationship and the claims asserted herein, that the agreement "shall be governed by and interpreted in accordance with the applicable domestic laws of the state of Maryland, U.S.A., excluding its principles of conflicts of laws and excluding the Convention on Contracts for the International Sales of Goods. The parties hereto irrevocably submit to the jurisdiction and venue of the federal district court located in Baltimore Maryland to resolve any dispute related hereto or arising hereunder."

**THE PARTIES**

4. The Plaintiff is, and at all times relevant hereto was, a Maryland limited liability corporation with its principal place of business located at 303 Second Street, Suite B, Annapolis Maryland 21403. GN has three members, Managing Member, Mike Spangler, Sean Treasure and Bulend Ipek.

5. Defendant Hakan Organics DMCC ("Hakan") is, upon information and belief, a United Arab Emirates company with its principal place of business located at 34th Floor, Mazaya Business Avenue, BB2 Tower Jumeirah Lakes Towers, Sheikh Zayed Road, Dubai, United Arab Emirates and is controlled by Hakan Bahceci. Hakan Organics DMCC is an affiliate of Hakan Agro DMCC, which is the entity that controls the subsidiaries and affiliates known as and referred to by Hakan Agro DMCC as the "Hakan Group." Hakan operates in the United States through affiliates such as Hakan Foods USA and Agropex International, Inc. and agents such as its director, Ashley Anderson Bahceci.

6. Hakan Bahceci is a successful international businessman based in Dubai. He is the group Chief Executive Officer of Hakan Agro DMCC. Mr. Bahceci has been based in Dubai for the past twenty years but is originally from Turkey. From Dubai, Mr. Bahceci controls the Hakan Group, which is comprised of various affiliate entities located in dozens of countries around the world, including in the United States and Mr. Bahceci's native Turkey.

7. Defendant Beyaz Agro ("Beyaz") is, upon information and belief, a Turkish company with its principal place of business located at Budak Mah 10031 Nolu Sok No 42 Yasem Is Merkezi Kat 10 D 1016-1017 Sehitkamil Gaziantep, Turkey and is an affiliate of Hakan and is controlled by its Chief Executive Officer, Goksal Beyaz.

8. Defendant Goksal Beyaz, is upon information and belief, a Turkish citizen. In February 2014, Hakan entered into an agreement with Goksal Beyaz to open Beyaz Agro as a

Hakan Organics satellite operation in Turkey in order to, among other things, facilitate the business relationship that is the subject of this Complaint. At all times relevant to the facts set forth herein, Beyaz has acted as an agent of Hakan.

9. Defendant Agropex International, Inc. ("Agropex") is, upon information and belief, a Georgia corporation with its principal place of business located at 413 South Main Street, Broadway, Virginia and is an affiliate of Hakan. Agropex is managed by Ashley Anderson Bahceci, formerly Ashley Bahceci, the ex-wife of Hakan Bahceci. Ms. Anderson is the Chief Executive Officer of Agropex, and is also the President of Hakan USA, Inc. and a Director of Hakan.[1]

**NATURE OF PROCEEDING**

10. This case arises from the fraudulent conduct of Defendants and Defendants' breach of contract with Plaintiff. GN was formed in 2016 to engage in the importation of organic feed grains for sale to grain mills and other downstream consumers and wholesalers of organic corn and soybeans ultimately used by organic farmers in the production of consumer goods such as organic chicken, milk and eggs.

11. Over the past decade, the demand for organic consumer goods has outpaced the supply of organic feed corn and soybeans necessary to generate these products. The time, expense and effort necessary to convert conventional corn and soybean producing farms to certified organic operations resulted in market pressure to find alternative sources overseas.

12. GN was introduced to Hakan Bahceci who identified Hakan, and its affiliated companies, as a source to provide substantial supplies of organic corn and soybeans for delivery to GN customers. Hakan Bahceci, Hakan, and its affiliated companies through Ms. Anderson

[1] Attached as Exhibit A hereto is a screenshot of Ms. Anderson Bahceci's LinkedIn profile.

Bahceci and Mr. Beyaz, represented that they could source sufficient quantities of organic corn and soybeans from farms in Turkey as well as Eastern European countries.

13. Per its published promotional materials, Hakan Bahceci is the group CEO of Hakan Agro DMCC, "a multinational agri-soft commodities supply company based in Dubai, UAE with processing facilities and offices in twenty-six (26) countries. Mr. Bahceci has over 25 years' experience in global agri-soft commodities supply chain management. He serves as president of CICILS Global Pulse Confederation (International Pulses Trade and Industry Confederation). He is also chairperson of the Private Sector Mechanism at the UN Committee on World Food Security. Mr. Bahceci holds a Bachelor's degree in English Literature and an MBA from Wollongong University, Australia."[2]

14. Based on a series of events at the outset of GN's relationship with Hakan Bahceci and Hakan, GN understood that Hakan controlled Defendants Beyaz and Agropex and that Mr. Beyaz and Ms. Anderson were agents of Hakan and its affiliates. At all times during GN's performance under the Trade Agency Agreement, described below, Hakan Bahceci and Hakan directed Beyaz and Agropex to perform various tasks and duties that made clear to GN that Hakan controlled and dominated Beyaz and Agropex and directed their respective business in support of the contractual relationship between GN and Hakan.

15. The precise relationship between these entities is somewhat opaque, and discovery is required to confirm all details regarding ownership and management of all Hakan Group entities.

16. Unbeknownst to GN, prior to entering into a contractual relationship with Hakan, the Defendants had already conspired to mislabel conventional, non-organic corn and soybeans

[2] Mr. Bahceci's biographical information is taken from this web bio:
https://www.eiseverywhere.com/ereg/popups/speakerdetails.php?eventid=92945&language=eng&speakerid=186918

as organic. It is now clear that the Defendants saw GN as a patsy and entered into the subject Trade Agency Agreement intending to use GN and its substantial network of customers to deceptively sell fraudulently mislabeled "organic" corn and soybeans into the United States and elsewhere.

## FACTUAL ALLEGATIONS

### A. The Hakan Group and Hakan Affiliates.

17. In addition to the representations Messrs. Bahceci and Beyaz made to GN and its members regarding the experience and abilities of Hakan and its affiliates, Hakan made further representations via the Hakan Agro DMCC website and other public pronouncements.

18. Per that website, "headquartered in Dubai, in the United Arab Emirates, under Hakan Agro DMCC, the Hakan Group has been bridging the gap between East and West for over twenty-five years. From its strategic location, the company specializes in the international supply chain management of agricultural and food commodities. Hakan is one of the largest companies of its kind in the world and supplies over fifty-five different products, amassing over 2.5 million metric tons of food commodities each year."

19. "A truly global company, the Hakan Group's international network is far-reaching, operating in twenty-four countries and exporting commodities from fifty-two nations to over a thousand customers in ninety destination markets. The Hakan Group is committed to providing the highest quality of products at the most affordable prices. Their loyal customers recognize this dedication and their renowned reputation has been built on it. By constantly adapting to customers evolving needs as well as to external market conditions, they are able to maintain a strong focus on building stronger relationships with their customers, which include industry and government procurement agencies as well as multi-lateral trade bodies."

20. "Hakan's global offices processing facilities, dry and cold storage distribution centers, and bonded and unbonded warehouses are managed by expert teams dedicated to both customer and supplier satisfaction. Ensuring each team consists of well-trained dedicated staff, allows the Hakan Group to manage such large scale operations. With teams working in different time zones around the world, a clear mandate is provided so that all team members are working together to maintain relationships, deliver high quality products, and create value for their business partners. The Hakan Group is fully committed to delivering excellence in the critical areas of quality and environmental management as well as food safety, consistently meeting the most stringent international standards. Hakan proudly supports the wider community with their outstanding commitment to corporate social responsibility."[3]

21. That website further described its business in the context of an industry awards event. Hakan Agro DMCC was adjudicated as finalist in record 6 categories namely "Corporate Social Responsibility Award", "Most Successful Company Award", "Best Agricultural Company Award", "Best Commodities Company Award" and Mr. Sudhakar Tomar, Managing Director of Hakan Agro DMCC was nominated for the "Business Leader of the Year Award" and "Free Zone Personality of the Year Award" in the inaugural DMCC Members Awards. The DMCC Members Awards recognizes the very best organizations chosen from nominations from over 12,000 companies in DMCC across 21 business categories and judged by independent members of the DMCC community. The award ceremony was held on May 31st 2016.

22. Mr. Tomar stated: "As an organization we remain strongly committed to maintain and nurture our decades' old relationships with all the parts of food system value chain from farmers to consumers. With utmost humility and gratitude I accept this award not just for myself,

---

[3] This information is taken from a promotional video embedded in the Hakan Agro DMCC website http://www.hakanfoods.com/

but on behalf of 1,500 plus strong hard working and passionate team members of Hakan Agro in 30 countries, Group Chairman & CEO Hakan Bahceci, Ashley Anderson and family members in recognition of their unconditional support and to help maintain the just conscience of our corporation Hakan Agro DMCC." Pictured below are Mr. Tomar and Ms. Anderson Bahceci at the May 31st 2016 DMCC event.[4]



23. Hakan Bahceci further touts his and his companies' abilities in his role as former Global Pulse Confederation President, blogging for Farming First – Hakan Bahceci: Making 2016 a Breakout Year for Pulses.[5] The blog post describes Hakan Bahceci as "the group CEO of

[4] The relationship between Hakan Bahceci and Ashley Anderson Bahceci is unclear, as public records indicate that on September 4, 2008 Ashley Susan Anderson Bahceci filed a complaint for divorce against Hakan Bahceci in the Georgia Superior Court, Seventh Judicial District, which resulted in a final decree being issued by that Court on December 17, 2008.

[5] The blog can be found at this link: https://farmingfirst.org/2016/02/hakan-bahceci-making-2016-a-breakout-year-for-pulses/. "Pulses" are legumes, such as lentils and soybeans.

Hakan Agro DMCC, a multinational agri-soft commodities supply company based in Dubai, UAE with processing facilities and offices in 26 countries. Hakan served as President of the Global Pulse Confederation. During his term, he advocated for the establishment of the International Year of Pulses. He is also the former President of the International Agri Food Network and Private Sector Mechanism at the UN Committee on World Food Security".

**B. GN is Formed and Enters into the Trade Agency Agreement.**

24. In the middle of October 2016, GN principals, Mike Spangler and Sean Treasure, travelled to Paris to meet with Hakan Bahceci and Goksal Beyaz. Spangler and Treasure already knew Messrs. Bahceci and Beyaz from their respective work in the feed grain business. The third GN principal, Bulend Ipek, knew Messrs. Bahceci and Beyaz and arranged the Paris meeting.

25. Based on the discussion at the Paris meeting and representations by Messrs. Bahceci and Beyaz, GN's principals incorporated Global Natural, LLC, filing its Articles of Incorporation on November 14, 2016.

26. Messrs. Spangler and Treasure's substantial experience in the organic grain and feed importation business and extensive experience and credibility with the end users and port operators made for a very attractive business opportunity for Defendants.

27. On or about November 16, 2016, Hakan sent GN a slide deck entitled "Hakan Organics DMCC Romania Project", which outlined Hakan's plans for sourcing organic feed grain from Romania, including signed contracts with two large farm operations and an anticipated 300,000 tons of organic corn per year. This presentation was delivered to GN so that

it could approach potential customers and end users that Messrs. Spangler and Treasure had long-standing relationships with.

28. On November 30, 2016, GN entered into a Trade Agency Agreement (the "Trade Agency Agreement" or the "Agreement")[6] with Hakan and its affiliates. Although the Agreement did not specify which of the Hakan affiliates were intended to be covered and bound by it, based on discussions at the time the Agreement was entered into, those affiliates include Defendants Beyaz and Agropex and Hakan Agro DMCC.

29. With the rapidly growing market for imported organic feed grains, GN believed that Hakan and its affiliates represented a supply chain that would allow GN to grow its new business (the "Hakan Supply Chain").

30. The Agreement recites that "Hakan engages in organic food and feed raw materials production and trade and exports these products" and Hakan and GN "desire to sell these products in North America (USA and Canada and Mexico)" and entered into business "on a sales agency basis."

31. The "sales product" subject to the Agreement comprised "Organic grains and oilseeds oils and derivative commodity products offered by Hakan."

32. Hakan agreed to "ship the organic commodities to the nominated ports" in North America (the "Territory").

33. The Agreement provided that "Title of goods and all risk on commodity including rejection by authorities in the Territory will be on Hakan until the goods are cleared from customs and discharged in to warehouse."

34. The parties agreed that "in carrying out their duties and responsibilities under this Agreement, they will neither undertake nor cause, nor permit to be undertaken, any activity

[6] A copy of the Trade Agency Agreement is attached as Exhibit B hereto.

which either (i) is illegal under any laws, decrees, rules, or regulations in effect in either the United States, the Territory countries or any other applicable countries; or (ii) would have the effect of causing the other party to be in violation of any laws, decrees, rules, or regulations in effect in either the United States, the Territory countries or any applicable countries."

35. Further, Hakan and its affiliates agreed "to indemnify and to hold harmless Agent, its officers, employees and agents from and against any claims, demands, causes of actions, loss, cost and expense, arising from, in connection with or based upon the actions or omissions of HAKAN, its officers, employees, agents or representatives, including, but not limited to any infringement on any third party intellectual property rights."

36. The parties agreed that the "Agreement shall be governed by and interpreted in accordance with the applicable domestic laws of the state of Maryland, U.S.A., excluding its principles of conflicts of laws and excluding the Convention on Contracts for the International Sales of Goods. The parties hereto irrevocably submit to the jurisdiction and venue of the federal district court located in Baltimore Maryland to resolve any dispute related hereto or arising [t]hereunder."

37. In entering into the Agreement, GN engaged in a massive sales push and entered into numerous contracts for the delivery of organic feed and grains. For example, from March 10th through 15th GN hosted a series of meetings in Las Vegas to introduce Messrs. Bahceci and Beyaz to GN's contacts in the organic feed grain market. This cost tens of thousands of dollars and trumpeted to the market the arrival of the GN-Hakan business relationship.

38. Defendants relied upon the reputation and business connections of the GN principals in order to secure substantial contracts for the sale of Defendants' "organic" goods.

**C. Hakan and it "Affiliates".**

39. As stated in its corporate video found on the Hakan.Foods.com website, the "Hakan Group" operates under Hakan Agro DMCC.

40. Hakan Organics DMCC, Hakan Foods, Agropex International, Inc., Hakan Gida ve Sanayi Dis Tic. Ltd. Sti., and Beyaz Agro DMCC are all affiliates and part of the Hakan Group, which Hakan describes as "a strategically located network of 26 overseas offices" in "twenty-four countries."

41. In pre-contract discussions with Messrs. Bahceci and Beyaz, those gentlemen explained that Beyaz, as a Hakan affiliate in Turkey, would source the organics that would be subject to the Agreement. They also explained how Hakan affiliate Agropex, run by Mr. Bahceci ex-wife and Hakan Agro DMCC director, Ashley Anderson Bahceci would act as the importer of the grain that ultimately GN would market to North American purchasers.

42. Although not specifically set forth as two of the affiliates subject to and bound by the Agreement, there was no doubt that Beyaz and Agropex were covered by the terms of the Agreement. Mr. Beyaz made clear to GN's members that he controlled Beyaz and Agropex and could bind them to the Agreement. Further, the express terms of the Agreement established that all parts of the Hakan Group controlled by Hakan Bahceci were affiliates subject to the terms of the Agreement. Finally, both prior to and after entering into the Agreement, GN did, in fact, work with these specific Hakan affiliates in performing the work envisioned by the Agreement.

43. Agents or employees of the Hakan Group that interacted with GN and its principals included: Hakan Bahceci, Goksal Beyaz, Ashley Anderson Bahceci, Darla Turner, Govind Agarwal, Mustapha Cakiroglu, Yigit Eroglu and Nuray Beyaz.

44. In communications with GN throughout the winter and spring of 2017, these Hakan agents all used Hakan email addresses, *i.e.*:

a. Hakan.Bahceci@hakanfoods.com;

b. Goksal.Beyaz@hakanfoods.com;

c. Ashley.Bahceci@hakanfoods.com;

d. Darla.Turner@hakanfoods.com;

e. Govind.Agarwal@hakanfoods.com;

f. Mustapha.Cakiroglu@hakanfoods.com;

g. Yigit.Eroglu@hakanfoods.com; and

h. Nuray.Beyaz@hakanfoods.com.

45. Throughout the relationship between GN and Defendants, it was abundantly clear and irrefutable that Agropex and Beyaz were Hakan affiliates utilized to perform aspects of the Agreement, and they took direction from Mr. Bahceci and other Hakan agents.

46. On January 10, 2017, GN emailed with Mr. Cakiroglu via his @beyazagro.com email address and advised Mr. Cakiroglu to "use Agropex as the buyer", whereas elsewhere Mr. Cakiroglu communicated via his hakkanfoods.com address. Mr. Cakiroglu not only shifts back and forth between his two different email addresses without any differentiation of what "hat" he was wearing, his signature blocks for the two "entities" both list the same office phone number in Dubai that is elsewhere identified as the Hakan office phone number, *i.e.* 90 342 324 44 47.

47. On January 12, 2017, Darla Turner, ostensibly the President of Agropex, emailed Hakan's Govind Agarwal from her darla.turner@hakanfoods.com email address, indicating the pressure Agropex was under from Penny Newman to pay for the unloading of the MV Four Diamonds shipment.[7] Instead of Mr. Agarwal responding, Goksal Beyaz responded, from his

[7] Penny Newman Grain Company is, per its own website, a leading merchant in the international market for grains and feed by-products. http://www.penny-newman.com/ GN's Spangler and Treasure had a longstanding relationship with Penny Newman and they acted as an intermediary for Hakan for the offloading, handling and storage of Hakan imports.

Goksal.beyaz@hakanfoods.com email address to GN and Ms. Turner asking that GN explain that Hakan could not pay because the banks in Dubai were closed.

48. In a series of emails dated January 10-14, 2017, Mr. Cakiroglu communicated via his hakkanfoods.com address with Ms. Turner, Ms. Anderson Bahceci, Mr. Beyaz and Ms. Beyaz, addressing all of them at their respective hakkanfoods.com addresses. In this email exchange Mr. Cakiroglu explained to Ms. Turner how a particular shipment via the MV Crinis was to proceed. In this email chain, Mr. Cakiroglu's signature block identified him as the Import Export Operations Manager for Hakan Organics DMCC, listing the same Dubai address utilized by Hakan Agro DMCC. Ms. Turner's signature block identifies her with Hakan Foods and lists her Hakan Foods phone number as the same as is elsewhere listed as the number for Agropex – (540) 246-3231. This email exchange also sees Mr. Cakiroglu directing the Agropex business activities, "Darla, Yes cargo will be imported by Agropex and be sold through Global Natural LLC."

49. Again on February 6, 2017, Darla Turner, from her hakanfoods.com email address, and with her Hakan Foods signature block, emailed GN regarding "Penny Newman inventory Four Diamonds."

**D. GN Learns of Challenges to the Hakan Supply Chain.**

50. Starting in February, 2017, GN began to learn of what it believed to be a campaign of misinformation regarding the Hakan Supply Chain.

51. In early February, GN received notice from its customer DFI Organics, Inc. ("DFI") regarding a shipment that was about to arrive in the port of Baltimore aboard the MV

Crinis.[8] DFI's Dennis Minnaard advised GN that it had received information calling into question the validity of the organic status of the feed grain on the MV Crinis.

52. On February 10, 2016, in an effort to continue its deceit of GN and avoid detection, Goksal Beyaz wrote to Mike Spangler, stating:

> Just talked with Dennis from DFI that they have concirn [*sic*] that usda is following this vessel,
> He would like to meet with me for probably canselling [*sic*] contract
> İ would like to ask you to check it from your side without informing anybody even DFI,
> My personal opinion that he agreed with tiryaki to take us from the market,
> They dont want any new actor(your company) in organic industry in the usa

53. Mr. Beyaz' reference to Tiryaki concerned a substantial competitor of Hakan that Defendants contended was behind the "false" claims regarding the MV Crinis shipment.[9]

---

[8]




[9] http://www.tiryaki.com.tr/en-EN/home/30.aspx

54. GN's Spangler put his credibility in the industry and with the USDA on the line, stating "[w]e have the credibility and relationship with USDA/Certifying bodies here in the US to fight this once and for all."

55. In order to assure DFI, GN's Spangler requested that Hakan and Beyaz provide documents sufficient to substantiate these allegations. "DFI has requested all documents be sent to them today, so they can review."

56. Defendants refused to provide this information, though, stating:

> ***No need to share documends with dfi,***
> ***you are selling them imported organic goods, i believe that they will refuse this batch anyway,***
> ***i dont want to share transaction certificate with anybody, it is record for agropex and information for you only,***
> ***i do not trust dfi,***
> ***they are playing with us from the beginning,***
> ***i think we should sell this vessel another endusers, we should focus on that***

57. As a result of Defendants' urgings and based on the ongoing misrepresentations by the Defendants, GN refused to comply with DFI's request.

58. On February 12, 2017, Goksal Beyaz, via his hakanfoods.com email communicated with GN, copying Ashley Anderson Bahceci via her hakanfoods.com email address, regarding concerns about the status of the corn on the MV Crinis shipment. GN wrote "Goksal, please confirm who loaded the organic corn on the MV Crinis, and who was the seller. Both parties need to be certified organic." Goksal Beyaz responded "We know what it needs very well about organic (sic)." Regarding these issues, GN sought information from Defendants to address DFI's concerns. Goksal Beyaz responded stating "I believe this is the game of tiryaki group and dfi is also part of it." This email copied Ashley Anderson Bahceci of Hakan and Darla Turner of Agropex. Goksal Beyaz used his hakanfoods.com email and Ashley Anderson Bahceci also used her hakanfoods.com email in this exchange.

59. On February 15, 2016, DFI's Dennis Minnaard wrote:

> It strongly looks like the corn is not of organic origin. The documents show that the corn has been shipped by Belor Romania from Romania to Hakan. Belor doesn't have any certified organic operations as can be concluded from the letter of the Romanian Ministry, which information is also available from public sources.
>
> The certificate of origin you sent us indicates Romania as the country of origin for the corn. So we're asking you once again: is Belor Romania involved in the supply chain or not? Because if they are indeed involved as producer or exporter of the corn or whatever, we'd of course need to have incontestable evidence on its valid organic EU/NOP certification.
>
> As regards the soybeans; the origin is stated as Ukrainian. Does European Commodity S.A. of Luxemburg have any organic certified soy bean projects in Ukraine? Who is the grower/producer of the soy beans? European Commodity doesn't seem to have an NOP certification.
>
> On top of this we point out that the Bs/L respectively the Certificates of Origin all state "Non-GMO Corn, in Bulk", respectively; "Non-GMO Soybeans, in bulk". There's no reference to organic?
>
> All the above raises serious concern, respectively questions which are in need of quick clarification. We repeat that we need to have absolute certainty about the organic status/nature of the goods through the entire supply/production chain, that is full traceability of both the corn as well as the soy beans.

60. On February 21, 2017, GN received a letter from Samuel Eric Lee of Holland & Knight LLP, representing the American Grain Importers Association ("AGIA"). Interestingly, public records indicated that AGIA was formed just a week earlier by one of Mr. Lee's colleagues.

61. The Lee letter alleged that GN had been offering for sale conventional soybeans that had incorrectly been described as organic. The letter enclosed documents that were claimed to be phytosanitary certificates that indicated the subject grain had been fumigated, rendering it non-organic.

62. Ashley Anderson Bahceci, via her hakanfoods.com email address, responded to her receipt of this letter from Mr. Spangler by stating "Let's see if Agropex gets same notice as well."

63. Upon receipt of the Lee letter, GN reached out to Defendants and was assured that all of the soybeans delivered by Defendants and subsequently sold by GN were indeed organic. Regarding the suspect phytosanitary certificates, Beyaz stated in a February 22, 2017 email "***İt is our phyto. Phyto they sent not valid***." Ashley Anderson Bahceci of Hakan and Darla Turner of Agropex were both copied on this statement.

64. Having received multiple, specific rejections of these claims by Defendants, GN and its counsel responded and asserted unequivocally that all such allegations and insinuations about the true status of the were totally false.

65. On March 3, 2017, GN received an anonymous email from an email address of abcdefg567894@gmail.com with the title "**ATTENTION INDUSTRY: conventional soybeans - sold in USA as ORGANIC. - GLOBAL NATURAL/AGROPEX/.**" The body of the email stated "soybeans (*sic*) sold in USA organic. Conventional (*sic*) from Ukraine sold to USA from Hakan agro on conveyance Four Diamonds - USA Seller AGROPEX and GLOBAL NATURAL FOODS. Soybean (*sic*) is in STOCKTON USA PENNY NEWMAN."

66. GN immediately and repeatedly reached out to Defendants and shared this information. Defendants, and their respective principals, Hakan Bahceci, Goksal Beyaz and Ashley Anderson Bahceci, repeatedly and vociferously denied that any of the grain delivered to GN and its customers was improperly designated as organic.

67. On April 26, 2017, in a WhatsApp chat from her Dubai number (+971-50-659-3416), Ms. Anderson Bahceci sought to assure Mike Spangler that the concerns about the MV

Four Diamonds shipment was manufactured by competitors, rather than the result of the fraudulent mislabeling and pawning off by Hakan affiliates Beyaz and Agropex:

| | |
|---|---|
| Mike | Do u know what's going on? |
| Ashley | Ok |
| Ashley | Yes |
| Mike | ADM Europe was mentioned |
| Ashley | It's same industry email docs |
| Ashley | That were circulated |
| Ashley | I spoke to him last Thursday |
| Ashley | I won't respond more – but pretty sure we closed in on who is doing it |
| Mike | Ok, great. |
| Ashley | They created a fake document yesterday. |
| Mike | Who? |
| Mike | Really? |
| Ashley | With a time stamp yesterday |
| Ashley | Some low level in ministry |
| Mike | Are you comfortable sending me more info? We are getting a ton of pressure |
| Ashley | It's just a draft |
| Ashley | But this is the basis for this guys investigation |
| Ashley | I told him to stop chasing fake documents |
| Mike | Are they creating fake Russian phytos and Turkish reexport phytos? |
| Ashley | Not sure |
| Ashley | But if they are creating fake drafts it's possible |
| Mike | What type of doc was faked yesterday? |
| Ashley | Like a draft of our phyto |
| Ashley | Once guy had our phyto number he obviously gave to third party |
| Ashley | And they created the draft |
| Ashley | Obviously did not realize it was time stamped |
| Ashley | Anyway still confidential cuz we want to catch this bastard |
| Mike | Understood! |

68. Based upon Defendants' assurances, counsel for GN responded to the Lee letter stating *inter alia* "***Global Naturals has not represented as organic any imported soybean products that were fumigated with aluminum phosphide during transit or storage at any point in the supply chain. All of Global Natural's organic products have the proper USDA certification necessary to support such labeling and advertising as such***."

69. Similarly, GN finally responded unequivocally to DFI through counsel, writing on March 7, 2017:

> Based on DFI's refusal of the shipment, DFI's failure to take receipt of the goods as required under the Contracts, DFI's decision to take another delivery of goods that prevented Global Natural's shipment from being received, and DFI's constant demands for documents that are not required under the Contracts, DFI has improperly repudiated and breached the Contracts. Global Natural has attempted to resolve this matter, for example, in its March 2, 2017 letter to DFI. However, DFI's actions now confirm that it has fully repudiated and breached the Contracts. Global Natural reserves all rights and remedies relating to DFI's repudiation and breach. As indicated before in our March 2 letter, Global Natural is now free to sell the goods to other customers and will proceed to do so.

70. On March 9, 2017 Ms. Turner received an inquiry from the USDA's Mark Bradley regarding a scheduled appointment at the Agropex offices in Broadway, Virginia. Mr. Bradley set out the topics of discussion for the meeting. Ms. Turner asked for assistance in preparing for this meeting/interview/inspection. On March 13, 2017, Goksal Beyaz from his hakanfoods.com email address, explained to Ms. Turner how the Agropex entity was organized and its role within the Hakan Supply Chain – odd, considering Ms. Turner was held out as the President of Agropex.

71. On March 16, 2017, Agropex issued invoices, Nos. 50135 and 50136, to GN regarding the sale of loads of "organic soybeans." The "Agropex" invoice lists Agropex's address as the same Dubai office as that identified with Hakan and the other Hakan affiliates.

72. A few weeks later, on March 21, 2017, another GN customer refused to accept delivery a shipment of grain:

> Mike,
>
> Our QA department received the attached docs from the Turkish government. They represent the export phyto for your soybean vessel and the incoming phytos for the representative tonnage. The import phytos numbers can be clearly matched to the export phyto and show that the product was fumigated in transit.
>
> Based on these third-party verified documents, our QA department is not comfortable with the organic integrity of the product you've sold us – as such we are rejecting the six railcars.

> We will release the cars back for billing after being reimbursed for all accrued freight charges and demurrage – an invoice will be generated in next few days. We will not pursue "buy-in" charges, however, please note that we have incurred costs procuring replacement product.
>
> You will receive a closed copy of our QA incidence report by the end of this week. All incident reports are shared with our organic certifier – Pro-cert organic systems.
>
> Please let me know if you have any questions.
>
> Jake Neufeld
> **Sunrise Foods International Inc.**

73. Again, based on assurances from Hakan and its affiliates, through Mr. Bahceci, Ms. Anderson Bahceci and Mr. Beyaz, as well as others, that all of these claims were baseless and likely the product of a malicious competitor, GN rejected its customer's claim – "***Global has not received any information that would support your unilateral decision to reject the shipment of goods under the Contract***."

74. During this period of time from mid-March through early April, GN repeatedly gave assurances to its customers and other companies involved in the movement, storage and sales of the subject grain, that all challenges to the Defendants grains were unfounded. Also during this time, GN was in communication with Hakan where Hakan was directing the business of Agropex by directing shipments and payments.

75. Further illustrating the fact that Agropex was an affiliate of Hakan, and was dominated and controlled by Hakan, on May 1, 2017, Ms. Turner wrote to Messrs. Spangler and Treasure of GN stating that "Ashley needs to speak to one of you ASAP … [s]he will be in the Dubai office until 7pm then after please call her mobile number. See below numbers to reach her" after which Ms. Turner listed the Hakan Agro DMCC office phone number as Ms. Anderson Bahceci's phone number at her office in Dubai.

76. GN, through the goodwill and reputation of its principals, vouched for Defendants throughout the industry. Ultimately, GN's reliance on Defendants and the resulting public support and defense of the Defendants proved to be a tragic mistake.

**E. The USDA Investigation and the Washington Post Reporting.**

77. On April 13, 2017, GN was visited by USDA staff to discuss concerns regarding the integrity of the Hakan supply chain. In fact, GN invited USDA staff to review documentation of its organic imports to prove the allegations untrue based on the assurances GN had received from the Defendants.

78. At that meeting, USDA staff provided GN with evidence that refuted all of the assurances that the Defendants had provided GN regarding the various challenges lodged against the Hakan "organics."

79. Shortly thereafter, on or about April 19, 2017, GN was approached by a reporter for The Washington Post who was researching a story on organic grain imports and who had received copies of the suspect phytosanitary certificates. The reporter stated in an email "***As part of my research I came across documents showing a soybean shipment that Global Natural got from Agropex International that looks like it wasn't organic, at least when it left Turkey. I've attached the documents showing that at least part of the shipment originated with ADM, which does not produce or handle organic foods, and that the shipment was fumigated with aluminum phosphide, which is a banned substance under NOP rules***."

80. At this point in time, GN was beginning to understand that what it had at first believed to be scurrilous and false claims about the grain it was selling was now likely true.

81. In response to the reporter's inquiry, GN provided the reporter with a statement: "***Global Natural is committed to the integrity of our supply chain, including the organic***

***certification of the grain products we sell here in the U.S. and elsewhere. Upon learning that select grain shipments from Eastern Europe may have been fumigated and Global Natural provided with falsified certification documents stating otherwise, we initiated an immediate investigation into the matter in addition to a review of our supplier monitoring and compliance provisions. Pending findings of this investigation, Global Natural has put a hold on the sale of all potentially affected products and secured alternative suppliers in order to meet our contractual commitment to customers***."

82. On April 28, 2017, as GN worked to discovery the truth, the USDA, Agriculture Marketing Service, National Organic Program's Deputy Administrator Miles McEvoy issued a Combined Notice of Non-Compliance and Proposed Revocation of Certification to Defendant Beyaz (the "Notice of Non-Compliance").[10]

83. GN received a copy of the Notice of Non-Compliance via email from Defendant Beyaz. In the email forwarding the Notice of Non-Compliance, Mr. Beyaz stated that he "need[s] a good lawyer."

84. The Notice of Non-Compliance advised Defendant Beyaz that the NOP enforces the Organic Foods Production Act of 1990, as amended (7 U.S.C. §§ 6501-6522) (OFPA), and its implementing regulations at 7 C.F.R. § 205 *et seq*. *See* Ex. A.

85. It goes on to explain that "Section 2106(a)(1)(B) of the OFPA (7 U.S.C. § 6505(a)(1)(B)) states that 'no person may affix a label to, or provide other market information concerning, an agricultural product if such label or information implies, directly or indirectly, that such product is produced or handled using organic methods, except in accordance with [the OFPA].' The OFPA further requires that, to be sold or labeled as organic, an agricultural product must be produced only on certified organic farms. In addition, section 205.105(a) of the USDA

[10] A copy of that document is attached as Exhibit C hereto.

organic regulations (7 C.F.R. § 205.105(a)) states that products sold as organic must be produced and handled without the use of synthetic substances prohibited by the regulations. Finally, section 205.100(c) of the USDA organic regulations (7 C.F.R. § 205.100(c)) provides that any operation that knowingly sells or labels a product as organic, except in accordance with the OFPA, shall be subject to a civil penalty of $11,000 for each violation." *Id.*

86. Further, the Notice of Non-Compliance states that "Section 205.660 of the USDA organic regulations (7 C.F.R. § 205.660) provides that the NOP may initiate suspension or revocation proceedings against a certified operation when the Program Manager has reason to believe that a certified operation has violated or is not in compliance with the OFPA or its accompanying regulations. Beyaz Agro is a certified organic operation, and therefore is in full knowledge of the requirements of the USDA organic regulations. ***The actions of Goksal Beyaz at Beyaz Agro, acting as agent of Hakan Organics DMCC (Hakan Organics), and through Agropex International (Agropex), to represent fumigated, non-organic soybeans as organic for sale in the United States are knowing and willful violations of the USDA organic regulations***." Emphasis provided.

87. The NOP investigation revealed that Defendant Beyaz and its CEO Goksal Beyaz, who serve as the General Coordinator[11] for Hakan Organics, acting on its behalf, violated the OFPA by selling fumigated soybeans from Ukraine in the United States while representing them as organically produced and handled. *Id.*

88. The Notice of Non-Compliance stated that Defendant Hakan imported four shipments of soybeans from Ukraine to Turkey under four phytosanitary certificates issued by the State Veterinary and Phytosanitary Service of Ukraine. Those phytosanitary certificates did

[11] As evidenced by business cards provided by the Hakan Organics DMCC booth to USDA NOP personnel at the BioFach trade show in Nuremberg, Germany in February 2017.

not indicate that the soybeans were organically produced, but they did show that the soybeans were fumigated with aluminum phosphide prior to entering Turkey. Hakan stored the soybeans at its warehouses in Turkey and the four shipments of soybeans were consolidated into a single shipment, under a single Turkish phytosanitary certificate, that referenced the original four Ukrainian phytosanitary certificates. *Id.*

89. Defendant Beyaz, in Turkey, applied to accredited certifying agent Kiwa-BCS for organic transaction certificates. However, Defendant Beyaz gave Kiwa-BCS false information about the soybeans. Specifically, it provided two certificates of inspection that were issued by bio.Inspecta AG, a USDA-accredited certifier, which identified Russia as the country of dispatch for 26,243,840 KG of organic soybeans. The application for an organic transaction certificate also included commercial invoices, bills of lading, and marine survey certificates that identify 16,250,000 KG of organic soybeans in bulk to be shipped to the United States in three holds aboard the vessel MV Four Diamond. Defendant Beyaz copied Goksal Beyaz and Defendant Hakan Import/Export Specialist Mustafa Patpat on the application request. *Based on this false information*, Kiwa-BCS issued Defendant Beyaz three organic transaction certificates, which listed the soybeans as organic. Defendant Beyaz used these certificates to re-export the Ukrainian soybeans to the United States as organic soybeans. *Id.*

90. Defendant Beyaz nominally sold the soybeans to Defendant Hakan affiliate Agropex and gave Agropex the three organic transaction certificates issued by Kiwa-BCS. It also gave Agropex copies of the same commercial invoices, bills of lading, and marine survey certificates that it used in the application to Kiwa-BCS, but this version of the documents identified the soybeans as non-GMO not organic. The soybeans were shipped to the United States on the MN Four Diamond. Defendant Agropex stored the soybeans with Penny Newman

Grain Company in Stockton, California, a certified organic handler. Defendant Agropex falsely represented to GN that the soybeans were organic. Under a contract with Hakan Organics and signed by Goksal Beyaz, GN arranged the sale of the soybeans to certified organic handlers in the United States for $10,083,125. *Id.*

91. NOP investigators subsequently obtained the commercial invoices, bills of lading, and marine survey certificates associated with these soybeans from Defendant Agropex and found discrepancies between Defendant Agropex's documents and those that Beyaz Agro provided to Kiwa-BCS, suggesting that these documents had been altered. *Id.*

92. Through the phytosanitary certificates issued by Ukraine and Turkish authorities, the records of the certifying agent, and the records of Defendant Agropex, the NOP was able to positively trace the fumigated soybeans, which Defendant Agropex sold and represented as organic in the United States, to the fumigated soybeans purchased by Defendant Hakan in Ukraine and re-exported through Turkey. *Id.*

93. Between March and October, 2016, Defendant Hakan Organics imported soybeans in bulk into Turkey from four exporters in Ukraine, as demonstrated in four Ukrainian phytosanitary certificates. *Id.*

94. The Ukrainian phytosanitary certificates show that each of the four shipments of soybeans was fumigated with aluminum phosphide, a prohibited substance under the USDA organic regulations. The phytosanitary certificates clearly identified Ukraine as the country of origin for the soybeans. Hakan Organics was identified on the phytosanitary certificates as the consignee in Turkey and therefore is a responsible, notified party. *Id.*

95. In preparation for re-export, the soybeans in bulk from the four shipments were consolidated under one phytosanitary certificate issued by the Turkish authorities, No: EC/TR B

0140061 dated October 27, 2016. Block 10 of Turkish certificate EC/TR B 0140061 referenced the four phytosanitary certificates issued by Ukraine. The four loads of bulk soybeans were then consolidated and re-exported in a single shipment aboard bulk carrier MV "Four Diamond" in Holds 1, 3, and 5. The soybeans in each hold were shipped under phytosanitary certificates, No: 0140369, No: 0140368, and No: 0140367 respectively. Each of these phytosanitary certificates had an attachment that linked the certificate to the preceding certificate "This phytosanitary certificate is issued instead of phytosanitary certificate No: EC/TR B 0140061." The Turkish Ministry of Food, Agriculture, and Livestock has confirmed that the Ukrainian phytosanitary certificates are for the same loads of soybeans as the Turkish certificates. The State Services of Ukraine on Food Safety and Consumer Protection has confirmed it issued the four Ukraine phytosanitary certificates and that the certificates are valid. *Id.*

96. In applying for an Organic Transaction Certificate, Goksal Beyaz and Defendant Beyaz, acting for Defendant Hakan, presented fraudulent information to an organic certifying agent of the USDA Secretary of Agriculture, in violation of section 2120 of the OFPA (7 U.S.C. § 6519(c)(2)). *Id.*

97. Defendant Beyaz sold the non-organic, fumigated soybeans through Defendant Agropex, to GN in violation of both 7 C.F.R. § 205.100(c)(2) and 7 C.F.R. § 205.105 (a). *Id.*

98. Defendant Beyaz provided Defendant Agropex commercial invoices, bills of lading, and marine survey certificates that identified the soybeans as non-GMO but did not identify the soybeans as organic. They also provided the fraudulently obtained organic transaction certificates issued by Kiwa-BCS to represent the soybeans as certified organic. Soybeans from MV "Four Diamond" were sold through Defendant Agropex as organic even

though the soybeans were not produced or handled in compliance with the OFPA and its accompanying regulations. *Id.*

99. Defendant Agropex used the fraudulently obtained organic transaction certificates to subsequently identify the soybeans as organic and to store the soybeans as organic at certified organic handler Penny Newman Grain Company, Stockton, California. Subsequently, GN, on behalf of Defendant Hakan, Defendant Beyaz, and Defendant Agropex, arranged for the sale of the non-organic soybeans to certified organic handlers in the United States. *Id.*

100. The Notice of Non-Compliance provided Defendant Beyaz thirty (30) days within which to appeal the findings set forth therein. *Id.*

101. On May 2, 2017, GN wrote to Defendants Hakan and Beyaz, stating that the facts set forth in the Notice of Non-Compliance "***provide ample basis for GN to reject the feed and grain subject to the USDA NOP investigation and to terminate the Agreement pursuant to Article 8 therein for the various breaches of the Agreement reflected in the Notice. Specifically, Hakan is in breach of Article 9, as it has undertaken or caused or permitted to be undertaken activities that are illegal under the rules and regulations of the USDA and has had the effect of causing GN to be in violation of certain USDA rules and regulation***."

102. Further, GN wrote that "***Under Article 10, Hakan has agreed to indemnify and hold GN harmless from and against any claims, demands, causes of action, loss, cost and expense, arising from, in connection with or based upon the actions or omissions of Hakan and its agents and representatives***."

103. On May 12, 2017, the Washington Post published an article entitled "The Labels Said 'Organic' But These Massive Imports of Corn and Soybeans Weren't."[12] The article begins with the following:

**A shipment of 36 million pounds of soybeans sailed late last year from Ukraine to Turkey to California. Along the way, it underwent a remarkable transformation. The cargo began as ordinary soybeans, according to documents obtained by The Washington Post. Like ordinary soybeans, they were fumigated with a pesticide. They were priced like ordinary soybeans, too.**

**But by the time the 600-foot cargo ship carrying them to Stockton, Calif., arrived in December, the soybeans had been labeled "organic," according to receipts, invoices and other shipping records. That switch — the addition of the "USDA Organic" designation — boosted their value by approximately $4 million, creating a windfall for at least one company in the supply chain.**

104. GN was not a party to this "remarkable transformation" nor did it reap any windfall from Defendants' fraudulent mislabeling.

105. The original Washington Post article spawned a variety of additional press coverage and responses from those engaged in the market of organics. The Organic Trade Association recently responded.[13]

> A vulnerability was revealed in the organic supply chain via a complaint that the United States Department of Agriculture's (USDA's) National Organic Program (NOP) received regarding non-organic grains and oilseeds being imported from Turkey and fraudulently sold as organic in the United States.
>
> In the course of investigating these complaints, NOP identified violations of the USDA organic regulations involving soybean

[12] https://www.washingtonpost.com/business/economy/the-labels-said-organic-but-these-massive-imports-of-corn-and-soybeans-werent/2017/05/12/6d165984-2b76-11e7-a616-d7c8a68c1a66_story.html?utm_term=.b111ec2fc0ad

[13] A link to this article can be found at https://ota.com/news/issues/ota-takes-action-fraudulent-imports .

> shipments managed by Beyaz Agro, a certified organic grain and oilseed handling operation, and two related entities: Hakan Organics based in Dubai, United Arab Emirates and Agropex, based in Broadway, Virginia. This investigation related to a shipment of 16,250 metric tons of soybeans, which arrived in the United States aboard the M/V "Four Diamond" on November 12, 2016. The soybeans had been previously exported from Ukraine to Turkey and were then re-exported from Turkey to the United States. However, before leaving Ukraine, the soybeans had been fumigated with aluminum phosphide. Aluminum phosphide is a prohibited substance under the USDA organic regulations. Upon arrival in the United States, the fumigated soybeans were sold as USDA organic. This action violated the Organic Foods Production Act and the USDA organic regulations.

**F. Revocation and Appeal.**

106. On June 1, 2017, the USDA NOP issued a revocation of Beyaz Agro's organic certification (the "Revocation").[14] In doing so, NOP Deputy Administrator Miles V. McEvoy described Defendant Beyaz' responses to the Notice of Non-Compliance.

107. The Revocation stated that "***on May 23, 2017, you, Goksal Beyaz, sent a letter to the NOP acknowledging that Beyaz Agro exported conventional, fumigated soybeans from Ukraine instead of the organic, Russian soybeans represented in organic certification documents. On May 29, 2017, you submitted a written declaration of withdrawal of your USDA organic certification to two USDA-accredited certifying agents, BCS-Kiwa and Control Union. On May 30, 2017, you further submitted a written declaration of withdrawal of your USDA organic certification to the NOP, as well as a statement of your intent to waive your rights to appeal the USDA's proposed revocation of Beyaz Agro's organic certification***." *See* Ex. B.

108. The Revocation concluded by advising Defendant Beyaz that "***Beyaz Agro and all of its responsibly connected persons, including any other person who is a partner, officer,***

[14] A copy of the Revocation is attached as Exhibit D hereto.

***director, holder, manager or owner of 10 percent or more of the voting stock, are hereby directed to cease and desist all sale and handling of products represented as organic*.” Defendants Hakan and Agropex are certainly “responsibly connected persons” as described in the Notice of Non-Compliance and the Revocation. *Id.*

109. Plaintiff has not been able to obtain a copy of the appeal submitted by Hakan regarding the Notice of Non-Compliance, but based on the Administrator’s Decision issued on July 5, 2017 by Acting Administrator Bruce Summers, it appears that Hakan challenged certain of NOP’s findings.[15]

110. The Administrator’s Decision was issued “in response to an appeal (APL-033-17) of [the Notice of Non-Compliance] … to Hakan Organics DMCC, located in Dubai, United Arab Emirates. The operation was deemed not in compliance with the Organic Foods Production Act of 1990 (OFPA) and the USDA regulations.”

111. In its appeal, as recounted in the Administrator’s Decision, “Hakan Organics DMCC argues that the violations cited by the NOP were perpetrated by Beyaz Agro, a certified organic handler that is distinct from Hakan Organics. The appeal states that Hakan Organics has no relationship with or control over Beyaz Agro, and Beyaz Agro is not authorized to act as an agent for Hakan Organics. The appeal notes that many allegations in the Proposed Revocation refer to specific actions taken by Beyaz Agro, not directly by Hakan Organics.”

112. Further, the Administrator’s Decision states that “Hakan Organics acknowledges that in February 2014, it entered into an agreement with Goksal Beyaz, a Turkish citizen, to open a Hakan Organics satellite operation in Turkey. Hakan Organics’ appeal notes that the ‘agreement with Mr. Beyaz entrusted him to execute certain transactions on behalf of Hakan Organics in Turkey.’ The Hakan Organics appeal states, ‘Unfortunately, as evidenced by the allegations in the Notice and

[15] A copy of the Administrator’s Decision is attached as Exhibit E hereto.

findings made during Hakan Organics' internal investigation into those allegations, that trust was grossly misplaced. On April 28, 2017, immediately upon learning of the misconduct alleged in the Notice, Hakan Organics terminated its relationship with Mr. Beyaz.'"

113. Hakan apparently attempted to disavow the actions of Beyaz and Goksal Beyaz "den[ying] that Beyaz Agro was an agent authorized to act on its behalf, and states that any action Mr. Beyaz took on behalf of Beyaz Agro was not authorized by Hakan Organics."

114. Acting Administrator Bruce Summers, in denying Hakan's appeal and revoking its organic certification, found *inter alia*:

- Hakan Organics acknowledges that it partnered with Mr. Beyaz to open satellite operations in Turkey and granted Mr. Beyaz authority to take certain actions on its behalf;
- Mr. Beyaz was authorized to establish e-mail accounts under the hakanfoods domain name for use by the Turkish operation. The delegation of these permissions is evidence that Hakan Organics understood that people with hakanfoods email addresses would be representing Hakan Organics beyond Mr. Beyaz;
- The phytosanitary certificates involved in this case identified Ukraine as the country of origin for the soybeans, and Hakan Agro DMCC (parent company of Hakan Organics) was identified on the phytosanitary certificates as the consignee in Turkey; it therefore is a responsible, notified party;
- As additional evidence of the connection between these businesses, in early 2017, Hakan Organics and Beyaz Agro shared an exhibition booth at the Biofach World Organic Trade Fair in Nuremberg, Germany. Booth staff provided two business cards

for Goksal Beyaz; one card was labeled Goksal Beyaz, Chairman, Beyaz Agro; the other was labeled Goksal Beyaz, General Coordinator, Hakan Organics;

- The "Trade Agency Agreement" between Hakan Organics and Global Natural, which stated that the parties agreed to enter into business on a sales agency basis. The agreement was signed by Goksal Beyaz as the General Coordinator for Hakan Organics DMCC; and
- Global Natural provided a banking record from February, 2017, documenting the wire transfer of directly from Hakan Agro DMCC to Global Natural LLC.

115. The Defendants knew, prior to entering into the Agreement with GN, that they were in possession of millions of dollars' worth of fraudulently labeled corn and soybeans that they intended to sell with the unwitting aid of GN, destroying this fledgling company and the reputation of its principals. As noted above, between March and October, 2016, Defendant Hakan Organics imported soybeans in bulk into Turkey from four exporters in Ukraine, as demonstrated in four Ukrainian phytosanitary certificates.

116. Further, the Ukrainian phytosanitary certificates show that each of the four shipments of soybeans was fumigated with aluminum phosphide, a prohibited substance under the USDA organic regulations. The phytosanitary certificates clearly identified Ukraine as the country of origin for the soybeans. Hakan Organics was identified on the phytosanitary certificates as the consignee in Turkey and therefore is a responsible, notified party.

117. By not appealing the Notice of Non-Compliance, Beyaz effectively conceded the facts as alleged therein. Those facts establish conclusively the Defendants' legal culpability as set forth herein. Those facts establish conclusively the Defendants' legal culpability as set forth

herein. Such was confirmed in the June 1, 2017 Revocation of Certification issued by NOP to Beyaz (the "Revocation").

118. Particularly, the Revocation explained that on May 23, 2017, Goksal Beyaz, sent a letter to the NOP acknowledging that Beyaz Agro exported conventional, fumigated soybeans from Ukraine instead of the organic, Russian soybeans represented in organic certification documents.

119. On May 29, 2017, Goksal Beyaz submitted a written declaration of withdrawal of Beyaz's USDA organic certification to two USDA-accredited certifying agents, BCS-Kiwa and Control Union.

120. On May 30, 2017, Goksal Beyaz further submitted a written declaration of withdrawal of Beyaz's USDA organic certification to the NOP, as well as a statement of intent to waive any rights to appeal the USDA's proposed revocation of Beyaz Agro's organic certification.

121. Per its May 29 and May 30, 2017 submissions, Beyaz Agro did not appeal the proposed revocation. Accordingly, Beyaz Agro's USDA organic certification was revoked in accordance with 7 C.F.R. § 205.662(0(2). Beyaz Agro and all of its responsibly connected persons, including any other person who is a partner, officer, director, holder, manager or owner of 10 percent or more of the voting stock, were directed to cease and desist all sale and handling of products represented as organic. Goksal Beyaz was advised that failure to cease and desist, and comply with the USDA organic regulations, may result in a civil penalty of $11,000 per viola en (7 U.S.C. § 6519).

**G. The Total Destruction of GN.**

122. The damage to GN's reputation and particularly that of its US-based members, Mike Spangler and Sean Treasure, is, at this stage, immeasurable. GN has attempted to cover all of the contracts that were to be fulfilled with Hakan's feed grains. Even this, however, has proven challenging, as GN has seen contracts repudiated on May 22, 2017 when US Commodities, LLC cancelled a contract based upon GN's "changing financial conditions … given the 'as yet' unquantifiable liability incurred by the ongoing investigation by the USDA of [GN] and its shipment of fraudulent organic product."

123. That same day, GN was contacted by Access World USA, LLC demanding payment of almost $700,000 for materials, labor, services and equipment furnished in connection with unloading and receiving grain from the Crinis and Daiwan Fortune shipments. Although not contractually liable, Access World USA, LLC threatened to "proceed with … collection measures" against GN.

124. On June 27, 2017 GN experienced clear reprisals for it having been associated with Hakan and its affiliates. That day, in response to an offer by GN to sell organic soybeans sourced from Argentina to a customer, GN received this response:

From: Spencer Miller <smiller@boydstation.com>
Sent: Tuesday, June 27, 2017 9:07 AM
Subject: RE: Argie soybeans
To: Mike Spangler <mike@globalnaturalllc.com>

Hi Mike

How are you? The growing season is under full swing so we are awaiting some progress report(s) from our U.S farmers.

Unfortunately, I don't think we will be able to do any business with Global Natural LLC at this time. Please understand it would be very difficult for us to explain to our customers that we are doing business with a company who was mentioned in the wake of the

> latest organic scandal (Washington Post). We have a transparent supply chain with a lot of our valued customers and until things get cleared up I don't think it is appropriate for us to do business. Upper management has expressed concern to me about doing business with Global Natural LLC.
>
> Please let me know if I can be of further help or if anything develops proving Global Natural's innocence in the whole ordeal.
>
> Thank you.

125. Since then the GN members have continued to suffer reputational damages, have lost out on employment and other business opportunities and have received demands from customers relating to damages suffered as a result of the Hakan fraud.

**COUNT I**
**(Common Law Fraud)**

126. Plaintiff GN realleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 125 above.

127. As set forth herein, the Defendants, separately or with the participation of each other, knowingly and intentionally misled and deceived the Plaintiff by engaging in the misrepresentations, concealments and failures to disclose the material facts described herein.

128. The Plaintiff justifiably relied on these misrepresentations and material omissions and was deceived by these concealments and failures to disclose material facts.

129. Concerning the intentional omissions, concealments and failures to disclose material facts described herein, the Defendants possessed superior knowledge, not available to the Plaintiff, of material facts, and such knowledge was exclusively in the control of the Defendants.

130. The Defendants' conduct was willful, wanton, material, and offensive.

131. The Plaintiff was damaged by these frauds in an amount of at least $20 million, together with attorneys' fees and costs.

WHEREFORE, as to Count I, Plaintiff Global Natural, LLC prays for judgment against Defendants and as relief therefor seeks:

A. An award of monetary damages at law for the economic injury GN has sustained to date and/or will sustain as the direct and proximate result of Defendants' fraud;

B. An award of punitive damages in an amount sufficient to punish and deter Defendants for their fraudulent conduct in this case.

C. All other and additional relief as justice and its cause require.

**COUNT II**
**(Breach of Contract – Corporate Defendants)**

132. Plaintiff GN realleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 131 above.

133. As set forth above, on November 30, 2016, the Hakan and its affiliates, Beyaz and Agropex, entered into a trade agency agreement with the Plaintiff (the "Agreement") in which those Defendants agreed to *inter alia* deliver organic products to GN and to neither undertake nor cause, nor permit to be undertaken, any activity which either (i) is illegal under any laws, decrees, rules, or regulations in effect in either the United States, the Territory countries or any other applicable countries; or (ii) would have the effect of causing the other party to be in violation of any laws, decrees, rules, or regulations in effect in either the United States, the Territory countries or any applicable countries.

134. Further, "***Hakan agree[d] to indemnify and to hold harmless Agent, its officers, employees and agents from and against any claims, demands, causes of actions, loss, cost and expense, arising from, in connection with or based upon the actions or omissions of Hakan, its officers, employees, agents or representatives***."

135. The Agreement also provides that, the non-prevailing party to this litigation "shall pay the reasonable attorneys' fees and costs incurred by the prevailing party."

136. Based on the facts set forth in the Notice of Non-Compliance, Hakan and its affiliates, Beyaz and Agropex have breached the Agreement, and are obligated to pay the Plaintiff all damages associated with their knowing and willful violations of USDA organic regulations in an amount of at least $20 million, plus costs, attorneys' fees and interest.

WHEREFORE, as to Count II, Plaintiff Global Natural, LLC prays for judgment against Hakan and its affiliates, Beyaz and Agropex and as relief therefor seeks:

A. An award of monetary damages at law for the economic injury GN has sustained to date and/or will sustain as the direct and proximate result of Hakan and its affiliates, Beyaz and Agropex breach of contract;

B. An award of punitive damages in an amount sufficient to punish and deter Defendants for their conduct in this case.

C. All other and additional relief as justice and its cause require.

**COUNT III**
**(Negligent Misrepresentation)**

137. Plaintiff GN realleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 136 above.

138. Defendants negligently made false representations of material facts to GN; namely, that Defendants would supply organic corn and soybeans under the Agreement.

139. Defendants, owing GN a duty to speak with care, were negligent in failing to discover that its representations were false, as Defendants had no intention of delivering actual organic corn and soybeans, and/or Defendants made such representations with such reckless

disregard for the truth so that it would be reasonable to charge Defendants with the knowledge of their falsity.

140. GN justifiably relied on Defendants' false representations by accepting and marketing the subject mislabeled corn and soybeans to mills and other downstream users, in reliance on Defendants' assurance to GN that the corn and soybeans were properly authenticated organic. Defendants received the benefit of the Agreement and knew that GN expected to be able to rely on Defendants' representations in marketing the corn and soybeans to its trusted customers. GN would not have entered into the Agreement had it known the truth about Defendants' intention to take advantage of GN's connections and reputation knowing that they would not be delivering organic corn and soybeans.

141. As a direct result of Defendants' negligent misrepresentations, GN has been damaged in an amount of at least $20 million, plus costs, attorneys' fees and interest.

WHEREFORE, as to Count III, Plaintiff Global Natural, LLC prays for judgment against all Defendants and as relief therefor seeks:

A. An award of monetary damages at law for the economic injury GN has sustained to date and/or will sustain as the direct and proximate result of Defendants' negligent misrepresentation;

B. An award of punitive damages in an amount sufficient to punish and deter Defendants for their intentional misrepresentations in this case.

C. All other and additional relief as justice and its cause require.

**COUNT IV**
**(Civil Conspiracy)**

142. Plaintiff GN realleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 141 above.

143. Throughout the course of events detailed in the Complaint the Defendants have acted in concert and pursuant to an agreement or understanding to injure GN in its lawful business.

144. In furtherance of that agreement or understanding, one or more of the Defendants engaged in the underlying breaches of contract, negligent misrepresentation and fraud detailed above.

145. As a direct and proximate result of this civil conspiracy, Defendants have caused and continue to cause severe economic injury to GN in its lawful business in an amount of at least $20 million, plus costs, attorneys' fees and interest.

WHEREFORE, as to Count IV, Plaintiff Global Natural, LLC prays for judgment against Defendants and as relief therefor seeks:

A. An award of monetary damages at law for the economic injury GN has sustained to date and/or will sustain as the direct and proximate result of Defendants' civil conspiracy;

B. An award of punitive damages in an amount sufficient to punish and deter Defendants for their conspiratorial conduct in this case.

C. All other and additional relief as justice and its cause require.

Respectfully submitted,

Date: October 30, 2017

/s/ William M. Krulak, Jr.
William M. Krulak, Jr.

/s/ Zachary S. Schultz
Zachary S. Schultz
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202

Phone: (410) 385-3448
Fax: (410) 385-3700
wkrulak@milesstockbridge.com
zschultz@milesstockbridge.com

*Counsel for Plaintiff, Global Natural LLC*